FARMERS CO-OPERATIVE CREAMERY CO. *v.* HUHN.

1. GUARANTY—CONTINUING GUARANTY.
    A bond executed by a private bank and its sureties to secure a depositor from loss by reason of money deposited "from time to time," is construed to be a continuing guaranty.

2. SAME.
    Where the amount of the liability in a surety bond is limited, and the time is not, it is generally construed as a continuing guaranty.

3. EVIDENCE—PAROL PROOF—GUARANTY.
    In an action on a surety bond, where the language used clearly imports a continuing guaranty, parol proof is inadmissible to show that the parties intended to limit the time of liability to six months.

4. GUARANTY—PARTNERSHIP—CHANGE IN PARTNERSHIP GENERALLY RELEASES SURETIES ON BOND.
    Generally, any change in the personnel of the obligor's partnership, after execution of a bond guaranteeing another against loss, releases the sureties, if the change is a valid one; the theory being that there is a different contract, on which the sureties never intended to become liable.

5. HUSBAND AND WIFE—PARTNERSHIP.
    A husband and wife may not enter into a valid contract of partnership.

6. GUARANTY—PARTNERSHIP—SALE TO PARTNER'S WIFE OF INTEREST IN PARTNERSHIP DOES NOT RELEASE SURETIES.
    A sale of an interest in a partnership to the wife of one of the partners is not such a change in the personnel of the partnership as released the sureties on a partnership bond, since said attempted sale was void and the partnership unchanged thereby.

Error to Ionia; Barton (Joseph), J., presiding.

[1]Guaranty, 28 C. J. § 111 (Anno); [2]Id., 28 C. J. § 110; [3]Evidence, 22 C. J. § 1469; [4]Guaranty, 28 C. J. § 154; [5]Husband and Wife, 30 C. J. § 259; L. R. A. 1916D, 1234 *et seq.;* [6]Guaranty, 28 C. J. §§ 154, 155; 20 A. L. R. 1304; 38 A. L. R. 1264; 13 R. C. L. 1368; 4 R. C. L. Supp. 858; 6 R. C. L. Supp. 785.

Submitted October 6, 1927.    (Docket No. 40.)    Decided December 1, 1927.

Assumpsit by the Farmers Co-operative Creamery Company against Charles E. Huhn, administrator of the estate of Albert C. Reed, deceased, and another as sureties on a bond.    Judgment for plaintiff, defendants bring error.    Affirmed.

*Watt & Colwell,* for appellants.

*F. C. Miller* and *George E. Nichols,* for appellee.

McDonald, J.    The plaintiff is a corporation engaged in buying and selling dairy products at Saranac, Michigan.    In December, 1910, William H. Proctor, William Gunn, and Frank J. Gifford were copartners engaged in the banking business at Saranac, Michigan, under the assumed name of the Farmers & Merchants Bank.    The plaintiff opened an account with this bank, but, before doing so, required a bond in the penal sum of $3,000 to secure it from loss by reason of the money which it might deposit "from time to time." Such a bond was furnished April 23, 1917, by the bank, with Albert C. Reed and Norman J. Ogilvie as sureties.    The bank failed on April 13, 1923, at which time it owed the plaintiff on account of deposits the sum of $4,049.    Mr. Reed died in January, 1925.    This suit is an action on the bond against his estate and Norman J. Ogilvie as sureties.    Findings of fact and law were filed and judgment was entered for the plaintiff in the sum of $3,000.    The defendants have brought error.

They urge two defenses to the action.    It is first contended that the bond on which the suit is based is not a continuing bond; that it was not intended to remain effective for a longer period than six months; and that, as the loss sustained by the plaintiff was on

deposits made after that time, there is no liability on the part of the sureties.

The bond which is in the penal sum of $3,000 contains the following applicable recitals:

"Whereas, the said principal, the said Farmers & Merchants Bank, of Saranac, Michigan, is engaged in a general banking business in the village of Saranac aforesaid and as such receive from time to time for deposit in said bank moneys belonging to said Farmers Co-operative Creamery; and

"Whereas, it is the desire of the said principal to fully protect the said Farmers Co-operative Creamery against any loss which it might sustain by reason of the deposit of said moneys in said bank as aforesaid;

"Therefore, the condition of this obligation is such that if the said principal, the said Farmers & Merchants Bank shall at all times faithfully and truly account to the said Farmers Co-operative Creamery for any and all moneys which the said creamery may from time to time deposit in said bank and shall at all times save the said Farmers Co-operative Creamery harmless by reason of the depositing of the said moneys with said principal as aforesaid, then this obligation is to be void and of no effect; otherwise to remain in full force and effect."

The language of the bond is plain and unambiguous. It is not necessary to go beyond it to ascertain the intention of the parties.   It recites that the principal, the Farmers & Merchants Bank of Saranac, receives deposits of money "from time to time" from the plaintiff and that its purpose in giving the bond is to secure the plaintiff to the extent of $3,000 from loss by reason of such deposits which it may make "from time to time."   The words "from time to time" clearly indicate a continuing guaranty.   They have been so construed.   In 28 C. J. p. 962, it is said:

"Thus, where the instrument of guaranty states that the guaranty is for goods to be furnished or advances to be made from 'time to time,' the guaranty will be construed to be a continuing one."

In support of this text, many cases are cited, including *Crittenden* v. *Fiske*, 46 Mich. 70 (41 Am. Rep. 146). It will be observed that in the bond in question the amount of the guaranty is limited to $3,000, but the specific time during which it shall continue is not stated. In *Mathews* v. *Phelps*, 61 Mich. 327, 332 (1 Am. St. Rep. 581), this court says:

"The general rule arising from the implication of the language used is that . when the amount of the liability is limited, and the time is not, the contract should be construed as a continuing guaranty."

On the trial in the court below, the defendants undertook to show by extrinsic evidence that the parties intended to limit the time of liability to six months. This testimony was not competent and the court properly refused to consider it. The intention of the parties is easily ascertainable from the language of the instrument. Parol proof was not admissible to show a different intention from that which the language used clearly imports. If it were the intention of the defendants to limit the time of the guaranty to six months, they should have seen to it that such a limitation was put in their contract. It is our conclusion on this question that the guaranty was a continuing one and covers all of the deposits made by the plaintiff to the extent of $3,000.

As a second defense to the action, it is urged that, after the bond in suit was executed, on April 23, 1917, there was a change in the partnership of the principal obligor, the legal effect of which was to discharge the sureties from further liability. Originally the partnership was composed of William H. Proctor, William Gunn, and Frank J. Gifford. Mr. Proctor died in January, 1917. The partnership was continued by the surviving parties. So that when the bond in question was given, on April 23, 1917, the partnership consisted of William Gunn and Frank J. Gifford. A

few weeks after this, the exact date is uncertain, Mr. Gunn, who had bought the interest of Mr. Proctor from the estate, sold a one-sixth interest to Belle Gifford, wife of the other partner, Frank J. Gifford. On the 19th of May, 1917, a certificate of copartnership was filed with the county clerk in which she was named as one of the partners. It is the claim of the defendants that this change in the personnel of the partnership releases the sureties. The general rule is well settled that, after the bond is given, any change in the personnel of the obligor's partnership releases the sureties. *White Sewing Machine Co.* v. *Hines,* 61 Mich. 423; *Mathews* v. *Garman,* 110 Mich. 559.

On this question of the effect of adding Mrs. Gifford to the partnership, the trial court found, as a conclusion of law:

"That on May 8, 1917, when it is claimed Belle Gifford became a partner with William Gunn and Frank J. Gifford in the Farmers and Merchants Bank of Saranac, that Belle Gifford was the wife of Frank J. Gifford, and any so-called claimed partnership in which she assumed to become a member of the firm with her husband was null and void; that she could not become a partner with him or in a firm of which he was a member, and that, therefore, there was no change in the partnership; that it continued as it was on the date of giving the bond."

Whether the addition of another partner to the principal obligor's firm was beneficial or prejudicial to the sureties is not important. Their release, if they are released because of such fact, is on the theory that the change in the obligation by the substitution of new names has the effect of making a different contract on which they never intended to become liable. It has been held, however, that to operate as a release of the sureties, the change must be a valid one. In 28 C. J. p. 996, under the heading "Invalid Change," it is said:

"The general rule stated presupposes that the change or alteration in the principal contract is a valid one, for if for any reason it is void and inoperative, the guarantor will not be released."

The rule that the change must be valid in order to effect a release of the sureties is well illustrated in those cases involving an extension of time for performance by agreement of the original parties. It is held that an extension of the time, though it is a material change in the contract and in many cases increases the guarantor's risk, does not release him unless the agreement for extension is valid and binding. In order to be valid, it must be based on a consideration and be for a definite period. On this question there is no conflict in the authorities.

In the instant case, the change made by adding Mrs. Gifford to the partnership was invalid. The doctrine of the common law as to the disability of married women precludes a partnership between husband and wife.

"The important and sacred relations between husband and wife, which lie at the very foundation of civilized society, are not to be disturbed and destroyed by contentions which may arise from such a community of property and a joint power of disposal and a mutual liability for the contracts and obligations of each other." *Artman* v. *Ferguson*, 73 Mich. 146 (2 L. R. A. 343, 16 Am. St. Rep. 572).

In view of the fact that an attempt to add another partner to the principal obligor's firm was invalid, the sureties on the bond were not released.

The judgment is affirmed, with costs to the plaintiff.

SHARPE, C. J., and BIRD, FLANNIGAN, FELLOWS, and CLARK, JJ., concurred. WIEST, J., concurred in the result.

The late Justice SNOW took no part in this decision.