## COHEN v. SCHULTZ.

### In re CONFORTI.

### No. 4252.

Circuit Court of Appeals, Third Circuit.

Aug. 28, 1930.

Bernard Freedman, of Newark, N. J., for appellant.

Abraham M. Herman, of Orange, N. J., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

**DAVIS, Circuit Judge.**

This is a proceeding to impress two liens held by Jacob Schultz against $5,000 in the hands of George Cohen, trustee of the estate in bankruptcy of Aurilio Conforti.

On January 5, 1928, Aurilio Conforti and Rose Conforti, his wife, executed a deed conveying certain lands in West Orange, Essex county, N. J., to the Titanic Realty Company, a corporation created and existing under the laws of the state of New Jersey. The deed was recorded in the office of the register of deeds of Essex county on the same day it was executed. On that day, and as part of the same transaction, the Titanic Realty Company executed to Aurilio Conforti a bond and purchase-money mortgage to secure the sum of $15,000, with interest at 6 per cent., which was recorded in the register's office on January 20, 1928. On January 21, 1928, Conforti assigned the bond and mortgage to the Broad & Market National Bank & Trust Company of Newark, as security for any present liability which Conforti had or any future liability which he might have to the bank and trust company.

On June 22, 1928, which was more than four months after any of the above-named transactions, Aurilio Conforti filed a voluntary petition in bankruptcy in the District Court of the United States for the District of New Jersey and was on that day adjudged a bankrupt.

On January 5, 1928, the same day on which Conforti conveyed the property in question to the Titanic Realty Company, Jacob Schultz docketed a judgment, which he had theretofore recovered in the district court of Orange, N. J., against Conforti, in the court of common pleas of Essex county for $446.64, but this judgment was not docketed until after the deed from Conforti to the Titanic Company had been recorded.

On January 19, 1928, Schultz recovered another judgment against Conforti in the Essex County Supreme Court for $1,255.43.

It is evident that neither judgment was a lien against the real estate itself which was conveyed to the Titanic Company. The first judgment, which was obtained in the district court of West Orange, N. J., did not become a lien against the real estate until it was docketed in the common pleas court of Essex county, and admittedly before it was docketed the deed from Schultz had been recorded. At the time, therefore, that the judgment was docketed, the property had gone out of Conforti and belonged to the Titanic Company. Neither did the second judgment

attach to the land, because it was not secured against Conforti until fourteen days after he had conveyed the land to the Titanic Realty Company. Section 2 of the New Jersey Judgment Act provides that "no judgment shall affect or bind any lands, tenements, hereditaments, or real estate, but from the time of the actual entry of such judgment on the minutes or records of the court." 3 Comp. St. 1910, p. 2956. Consequently neither judgment attached as a lien against the real estate.

On the election of Cohen as trustee of the bankrupt estate, he filed a bill in the Court of Chancery of New Jersey to set aside the conveyance by the bankrupt to the Titanic Company and to cancel the purchase-money mortgage and for the reconveyance by the Hill City Building & Construction Company of part of the land in question, which had in the meantime been conveyed to it by the Titanic Company, on the ground that the conveyance ,was fraudulent and void and was made while the bankrupt was insolvent, and that the object of the conveyance was to defraud, hinder, delay, and embarrass the creditors of the bankrupt in collecting the money due them.

Answers were filed by Rose Conforti, denying that the conveyance was fraudulent and without adequate consideration; by the Broad & Market National Bank & Trust Company alleging that the bankrupt was indebted to it in the sum of $6,336.73 with interest, and offering to assign the bond and mortgage to the trustee upon the payment of that sum with interest and costs; by the Titanic Realty Company denying that it knew that the bankrupt was insolvent at the time the deed was made and recorded or that it was made to defraud, hinder, delay, and embarrass the creditors, and, on the contrary, averring that the consideration of $15,000 was the proper value of the real estate over and above the liens and incumbrances thereon.

On October 1, 1928, while this litigation was going on, the Titanic Realty Company offered to pay the trustee $5,000 for the interest of the bankrupt in the $15,000 mortgage, provided the trustee would dismiss the bill. This offer was submitted to the court and an order was entered directing the creditors to show cause why the offer should not be accepted. On the return day of the order the appellee, Schultz, by counsel, appeared and represented to the referee that $15,000 was the fair value of the equity which

the bankrupt had in the lands at the time they were conveyed.

In view of this fact and the further fact that the outcome of the suit to set aside the conveyance was exceedingly doubtful, the trustee recommended the acceptance of the offer to sell the bond and mortgage. An order was thereupon made by the referee directing the compromise of the suit upon the payment to the trustee of the $5,000, and ordered the trustee upon-such payment to deliver an assignment of the mortgage, subject to the interest of the Broad & Market National Bank & Trust Company, to the Titanic Company, and to give it a quitclaim deed, quitclaiming any right which he, as trustee, might have in the land, and to discontinue the suit in the Court of Chancery to set aside the conveyance.

█ It is upon the $5,000 thus received by the trustee that the appellee is here trying to impress the liens. Does Schultz by virtue of his judgments against the bankrupt, which did not attach to the real estate in question, have a lien against the settlement affected by the trustee in the litigation to set aside the mortgage? We know of no principle of law, decisional or statutory, which gives him such lien.

Whether the trustee would have succeeded in setting aside the conveyance or whether the payment of the $5,000 by the Titanic Company was wise or otherwise is beside the question at issue. The fact is that, under all the circumstances, it seemed wise both to the trustee and the referee that the offer be accepted. The trustee now has that money for distribution, and the question is whether it should be distributed pro rata among the general creditors including the appellee, or whether he has a prior claim against it.

█ Section 70a of the Bankruptcy Act (11 USCA § 110(a) expressly vests the trustee with property transferred by the bankrupt in fraud of creditors. Antecedent creditors have no lien upon the property thus conveyed or the fund realized from it. Their right is merely the right to set aside the fraudulent conveyance and subject the property to levy under execution. The Bankruptcy Act does not give them preference. Consequently the recovery by the trustee is held for distribution to creditors generally with no preferences, except those specially designated in the statute, and Schultz is not one of those creditors. So it does not appear that the appellee could impress his lien upon the $5,000 even if the transfer had been fraudulent; and, since

it has not been so declared, he has no claim whatever to a preference. Mullen v. Warner (C. C. A.) 11 F.(2d) 62; Globe Bank & Trust Co. v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583.

Counsel for appellee moved at the time of his argument to dismiss this appeal on the ground that it was a petition to review and revise the order of the District Court, whereas it should have been an appeal. Appellant says that this motion should not prevail because it was not seasonably made, and further that it was not made in writing as required by the rules of this court. Since the passage of the Act of May 27, 1926, § 9, 44 Stat. 664, amending Bankruptcy Act, § 24 (11 USCA § 47), abolishing the distinction between appeals and petitions to revise and review, appeals may be taken as a matter of right from a "controversy" without an order therefor. Southern Engine & Pump Co. v. Pagel Electric & Ice Co. (C. C. A.) 16 F.(2d) 268; Clements v. Conyers (C. C. A.) 31 F.(2d) 563; Globe Bank & Trust Co. v. Martin, 236 U. S. 288, 295, 35 S. Ct. 377, 59 L. Ed. 583.

In any event we may treat the petition to revise and review as an appeal. In the Matter of Rasmussen et al., 287 F. 860 (C. C. A. 2).

The order of the District Court allowing liens is reversed, and the order of the referee is reinstated.