**HILLER et al. v. OLMSTEAD.**
No. 5740.

Circuit Court of Appeals, Sixth Circuit.
Dec. 9, 1931.

---

[1] See, also, our conclusions on this point in Hammerschmidt v. U. S., 287 F. 817, 824; Knable v. U. S., 9 F.(2d) 567, 569, 570.

F. E. Wetmore, of Hart, Mich., for appellants.

Wilfrid Hocking, of Ludington, Mich. (Clay F. Olmstead, of Ludington, Mich., on the brief), for appellee.

Before DENISON and HICKEN-LOOPER, Circuit Judges, and WEST, District Judge.

HICKENLOOPER, Circuit Judge.

The bankrupt, Burt Hiller, conducted a retail store under his own name in the city of Ludington, Mich. When the business was first started in September, 1921, Minnie Hiller, his wife, advanced $1,200 of her own funds, and from time to time thereafter contributed further and smaller amounts to the venture. The building occupied by the store was held under a contract of purchase made in the names of both the husband and wife. The bank accounts were also carried in the names of both. Both contributed their services. A financial statement rendered to a creditor in 1926 disclosed no interest on the part of the wife, and no such interest appeared upon the books of account; but an

insurance policy upon the stock of merchandise was taken out in their joint names.

On May 22, 1929, a fire occurred, and shortly thereafter Burt Hiller was adjudicated an involuntary bankrupt. The fire loss was adjusted at $1,300.65, for which sum a draft payable to "Burt Hiller and Minnie Hiller," the insured, came into the hands of the trustee in bankruptcy. The full proceeds of this draft are claimed by such trustee as a part of the estate, and the only questions now presented are whether Minnie Hiller and the bankrupt are entitled to the whole of this sum (claimed by them [or her] by virtue of Act 212 of the Public Acts of Michigan of 1927); whether Minnie Hiller alone is entitled to one-half of such sum (claimed by her upon the theory that such insurance was taken out in their joint names to protect her investment in the business and that she therefore had some sort of an equitable title in the proceeds in the event of loss); or whether she is entitled to none of such money.

█ The above facts may be deduced from what purports to be a transcript of the evidence taken before the referee in bankruptcy, as the same is printed in the record, but the record as a whole is in a deplorable state. The purported transcript bears no certificate of approval by either referee or District Judge, nor certificate that it contains all the evidence. No attempt whatever was made to comply with rule 34 (2) of this court, in that there are no findings of fact, nor do the facts appear by a certificate of the referee "which has been, as to its facts, accepted by the District Judge," as there required. Nor is the petition of the claimant, presented to the referee and analogous, we assume, to a reclamation petition, made part of the record. Under such circumstances, it is at best doubtful whether there are here any questions either of law or of fact which we can review,[1] even though we treat the "petition to superintend and revise in the matter of law," filed upon allowance of this court, as a petition for appeal,[2] and the case as thus properly appealed under § 24 (a), as it should have been,[3] instead of under § 24 (b) as amended by the Act of May 27, 1926, c. 406, §

[1] See In re Novo Pathic Hospital Co., 14 F.(2d) 955 (C. C. A. 6);

[2] See Cohen v. Schultz, 43 F.(2d) 340 (C. C. A. 3);

[3] Taylor v. Voss, 271 U. S. 176, 181, 46 S. Ct. 461, 70 L. Ed. 889; Craig v. Industrial Acceptance Corp., 45 F.(2d) 19 (C. C. A. 8); In re Weissman, 19 F.(2d) 769, 53 A. L. R. 644 (C. C. A. 2). Cf. Clements v. Conyers, 31 F.(2d) 563 (C. C. A. 7); White v. Barnard, 29 F.(2d) 510 (C. C. A. 1).

9, 44 Stat. 664 (11 U. S. C. § 47 [11 USCA § 47]).

█ But apart from the apparent inadequacy and insufficiency of the record, we are of the opinion that the judgment of the bankruptcy court, denying both Burt Hiller and Minnie Hiller any interest in the proceeds of this insurance, should be affirmed. Act 212 of the Public Acts of Michigan of 1927 in effect created an estate by the entireties in "all bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife," with the consequent limitation under Michigan law upon the right of creditors to subject such property to the payment of the debts of either unless moneys of the husband had been applied to the creation of the estate after the debt had been incurred, and then only to the extent of such application, presumed to be one-half in the absence of evidence to the contrary. Michigan Beef & Provision Co. v. Coll, 116 Mich. 261, 74 N. W. 475.

The argument presented is that immediately upon the happening of loss the policy of insurance was converted from a simple contract into an "evidence of indebtedness" and thus came under the provisions of Act No. 212. To this we cannot agree. Not only would the happening of an event which created contract liability not convert such contract into an "evidence of indebtedness" if it had not such character before, thus changing its very nature, but it is manifest that the words "evidence of indebtedness," as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated. The maxim noscitur a sociis applies.

█ Nor do the contentions that the policy of insurance was intended to create a security interest in the wife or to partially cover and protect her "interest in the business," and that the designation of the insured, having been made more than four months prior to bankruptcy, would not amount to a voidable preference, help the cause of the claimant. While it may be accepted as the well-established law of Michigan that a married woman is without capacity to contract a partnership with her husband, so as to render both jointly liable upon the contracts of the firm,[4] no ques-

[4] See Artman et al. v. Ferguson et al., 73 Mich. 146, 40 N. W. 907, 2 L. R. A. 343, 16 Am. St. Rep. 572; Cf. Lesher v. Brosteau, 238 Mich. 189, 193, 213 N. W. 163; Co-Operative Creamery Co. v. Huhn, 241 Mich.

tion of such contract liability is here raised. We are concerned, rather, with property rights and interests. The claimant is petitioning a court of equity to award to her a portion of that which could normally only constitute a part of her husband's estate, or, in many jurisdictions, a part of the partnership assets, for fire insurance is normally only for the indemnity of the owner of the property insured. We do not doubt that Mr. and Mrs. Hiller were so far engaged in a joint enterprise as to justify and validate a policy of insurance in their joint names (as the contract for the purchase of real estate, the joint bank accounts, the common contributions of business capital, the rendition of services by both in the conduct of the business, and even the policy of insurance itself, would seem to indicate), but we know of no equitable doctrine which should permit the wife to assert her incapacity in order to escape liability upon the debts of the joint enterprise on the one hand, and on the other hand to assert the valid existence of such joint adventure in order to validate the insurance policy and to sustain a claim for one-half of the proceeds thereof, either on the ground that such proceeds were partnership assets and therefore not directly involved in the bankruptcy proceedings of one of the partners, or because the moiety thereof represented but her insurable interest in the assets of such business as to which it was intended she should be protected. In either such latter event, the existence of a partnership owning the merchandise must be assumed and the insurance money must be considered a partnership asset, unless the policy be considered solely as an incumbrance, as will be discussed below. The incapacity to contract partnership relations is solely that of the wife, and if property comes into her possession, directly or indirectly, under or by virtue of an attempt to enter into the prohibited relationship, she must in equity account for it to those who are ultimately interested and entitled, viz., the creditors.

 The referee and the District Court held that the wife did not, by her participation or by failure to divulge her interest in the business, lose her claim for money advanced to her husband, but as to such sums

she remained a creditor of the estate. This ruling is not assailed by the trustee, and we see no reason to doubt its soundness. Upon the hypothesis of the existence of such debtor and creditor relationship, the claimant asks the court, if she be not otherwise entitled to a half interest in the insurance money, to infer that the policy of insurance was intended to create and did create in her an interest in the property insured, to secure her for moneys advanced. We think it is clear that no such actual intent existed. The policy was not issued to the bankrupt as owner of the property, and assigned to his wife as collateral security, and we are not called upon to decide whether the adoption of such procedure would have operated to create contingently a valid security interest in the proceeds. Nor do the facts justify considering what was done here as the equitable equivalent of such procedure. It is equally clear that under the Michigan Bulk Sales Law, sections 9545 and 9548, Compiled Laws of 1929, and the chattel mortgage recording statute, section 13424, Compiled Laws of 1929, any attempt to create such "security interest" in the stock of merchandise itself, by the issue of a policy of insurance in the joint names of the owner and the creditor, would be void as against other creditors. Either the issue of such a policy of insurance must be accepted as a recognition at that time of a claim of existing proprietary interest on the part of the wife in the merchandise, which we think it was, or such policy was wholly ineffective to create such interest.

The order of the District Court is affirmed, and the cause is remanded for such further proceedings as may be necessary to effect collection by the trustee, whether by compelling indorsement of the draft by the bankrupt and his wife, or otherwise.

23, 28, 216 N. W. 370; Kuntz v. Kuntz, 244 Mich. 78, 82, 221 N. W. 285. And such married woman cannot be held liable even upon a contract executed both by her and by her husband for improvements upon real estate held by them jointly, by the entireties, since such an estate is not "the separate property of the wife." Speier et al. v. Opfer et al., 73 Mich. 35, 40 N. W. 909, 910, 2 L. R. A. 345, 16 Am. St. Rep. 556.